## MYERS v DEFIANCE (city)

On Appeals, 3rd Dist, Defiance Co.

No. 110.   Decided March 28, 1940

Walter S. Jackson, Lima, John Marsh, Jr., Delphos, for plaintiff-appellant.

E. L. Clemens, Defiance, for defendant-appellee.

## OPINION

By GUERNSEY, J.

This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Defiance County, Ohio.

While in his petition the plaintiff asks for a declaratory judgment that certain provisions of an ordinance of the City of Defiance, entitled "An ordinance regulating and licensing dry cleaning, dyeing, pressing, carpet cleaning, laundry and hat cleaning establishments and solicitors", are unconstitutional and void in that said provisions are in excess of the legislative power of the council of the city, and are unreasonable, arbitrary and oppressive; and are discriminatory and constitute class legislation; and are designed to exclude competition and the conducting of business by those other than residents of Defiance, Ohio; and that the ordinance does not effect the purpose in its title nor bear any real or substantial relation thereto; and that said provisions of the ordinance are in contravention of the constitutional rights of the plaintiff as guaranteed to him by the Constitution of the State of Ohio and of the United States, the allegations of the petition are broad enough to entitle the plaintiff to affirmative relief by way of injunction against the enforcement of said provisions. And the prayer of the petition, in addition to asking for declaratory judgment as mentioned, asks for such other and further relief as the plaintiff may be entitled to either in law or in equity.

An action for declaratory judgment being a special statutory proceeding not cognizable in a court of chancery is not such an action as may be ap-pealed to this court on questions of law and fact under the provisions of Sec. 6 of Art. IV of the Constitution. But as the petition in the instant action although asking for a declaratory judgment states a cause of action for affirmative relief in equity the action constitutes a chancery case appealable to this court on questions of law and fact, and the appeal will be so considered.

By agreement of the parties the case is submitted to this court on an agreed statement of facts which, omitting the caption and exhibit thereto attached, is as follows:

"It is stipulated and agreed by and between C. H. Myers, d. b. a. Myers Cleaners, plaintiff herein, and Erwin Clemens, as legal counsel and City Solicitor of Defiance, Ohio, that this cause is hereby submitted to the court upon the pleadings and the following statements, however, it is agreed that this stipulation shall be considered and made a part of the proceedings and record in this action.

"STIPULATIONS.

"That on or about the 2nd day of October, 1934, the Council of the City of Defiance, Ohio, duly passed Ordinance No. 1024, titled 'An ordinance regulating and licensing dry cleaning, dyeing, pressing, carpet cleaning, laundering and hat cleaning establishments and solicitors' which said ordinance now appears as being in full force and effect in said City, and is in the words and figures, as follows, to-wit:

"ORDINANCE No. 1024.

"An ordinance regulating and licensing dry Cleaning, Dyeing, Pressing, Carpet Cleaning, Laundering and Hat Cleaning Establishments and Solicitors.

"BE IT RESOLVED BY THE COUNCIL OF THE CITY OF DEFIANCE, STATE OF OHIO:

"Section 1. It shall be unlawful for any person, firm or corporation to engage in the business of dry cleaning, pressing, or laundering of clothing, wearing apparel, household furnishings, linens or wash goods of any kind, or to solicit any such business in the City of Defiance, Ohio, without first applying

638

to the Mayor for a license to do so, which application shall state the name under which such business is operated and the names of the officers or individuals conducting the same, together with the place of business and the location of the establishment at which the work is actually done, and the name of the person, firm or corporation that owns or operates the establishment where said work is actually carried on. The fee for such license to be the sum of five ($5.00) Dollars per annum, which license shall be obtained on or before the first day of June each year and expiring at midnight on the 31st day of May of each year.

"Section 2. In all instances where it appears from the application that the establishment where such work is carried on and such cleaning, pressing or laundering done is owned or operated by any other person than the applicant it is mandatory that the applicant in the conduct of such business and in any and all advertising of every kind and nature, state that said applicant is acting only in the capacity as agent for the person, firm or corporation actually doing the cleaning or pressing and stating the location of said establishment; and where it appears from the application that neither the establishment where such cleaning or pressing or both are carried on is located in the City of Defiance, Ohio, it shall be necessary for such applicant, before a license may be issued to deposit with the City Treasurer a bond in the sum of not less than One Thousand Dollars ($1000.00) cash, conditioned that such applicant, person, firm or corporation, shall well and truly account for all property removed from the City of Defiance, Ohio, for either cleaning of pressing purposes, or both, and in case of loss or destruction indemnify owners of such property for the value thereof.

"The provision requiring a cash bond shall not apply however to any person, firm or corporation who maintains and operates in the City of Defiance, Ohio, an establishment where either the cleaning or the pressing or both are carried on. The said bond shall remain in the hands of the Treasurer for ninety days after the last day of operation by said person, firm or corporation in said City of Defiance.

"Section 3. If applicant is a corporation and does not have its office and principal place of business in Defiance, Ohio, or if any individual or partnership and such individual and all of said partners do not reside in said City of Defiance, the applicant shall given the name and address of such adult person resident of the City of Defiance, Ohio, upon whom service of summons can be had in any civil action brought against said applicant by any resident of the City of Defiance, Ohio. Said applicant shall expressly agree in said application that service of summons upon the agent so designated in any civil action brought against said applicant by any resident of said City of Defiance, Ohio, shall be service upon the principal and shall be recognized in any court of law in Defiance County, Ohio, as good and valid service upon said principal.

"Section 4. Any person, firm or corporation violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and fined not to exceed Three Hundred ($300.00) Dollars, or by imprisonment in the county jail for not to exceed thirty (30) days, or by both such fine and imprisonment.

"Section 5. If any section of this ordinance shall be declared null and void, the other sections shall nevertheless remain in full force and effect.

"Section 6. This ordinance shall take effect and be in force from and after the earliest period allowed by law.
"Passed: October 2nd, 1934.
"Approved: October 2nd, 1934, Joe C. Krutsch, Mayor.
"Attest: W. A. Hull, Clerk.
JOHN K. BRIDENBAUGH,
President of Council.

"I, W. A. Hull, Clerk of Council of the City of Defiance, Ohio, hereby certify that the above and foregoing Ordinance No. 1024 was duly and regularly published in The Defiance Crescent News, an independent paper, published and of general circulation in the City

of Defiance, Ohio, on October 6th and 13th, 1934."

"That the first license as issued under Ordinance No. 1024 in said City of Defiance, Ohio, to any firm, person, partnership, or corporation was issued as of the 20th day of September, 1938.

"That on or about the 9th day of September, 1938, Joe C. Krutsch Mayor of the City of Defiance, Ohio, forwarded by mail to Myers Cleaners at 516 Clinton Street, Defiance, Ohio, a letter or notice, in the words and figures, to-wit:

"September 9th, 1938.
"To: Myers Cleaners
"516 Clinton St., City.
"Honorable Personnel:
"You are hereby notified that it is the intention of the City of Defiance to enforce Ordinance No. 1024, regulating and licensing dry cleaning, dyeing, pressing, carpet cleaning, laundering and hat cleaning establishments and solicitors therefor.

"This ordinance provides that a license should be issued to persons who intend to carry on this type of business.

"A license, however, is contingent upon the fact that an application for such a license must be properly filled out by the person applying for this license.

"For your convenience there is enclosed herein an application blank. Please fill this blank out and return to the office of the Mayor of the City of Defiance, Ohio, on or before the 20th day of September, 1938. The license fee is $5.00 per year.

"Please give this matter your prompt attention.

"Respectfully submitted,
"Joe C. Krutsch, Mayor."

"That on or about the 19th day of September, 1938, C. H. Myers, d. b. a. Myers Cleaners filed or caused to be filed with the Mayor of Defiance, Ohio, an application for a license, in compliance with Ordinance No. 1024, regulating and licensing dry cleaning, dyeing, pressing, carpet cleaning, laundering and hat cleaning establishments and solicitors, which said application is in the form as furnished and as provided for applications for licenses under such ordinance and a copy of which is as follows, to-wit:

"Application for License.
In compliance with Ordinance Number 1024 Regulating and Licensing Dry Cleaning, Dyeing, Pressing, Carpet Cleaning, Laundering and Hat Cleaning Establishments and Solicitors.
1. Name of business? Myers Cleaners.
2. Names of officers or owners of business? C. H. Myers.
3. Location of business? 516 Clinton St., Defiance, Ohio.
4. Name of establishment where work is done? Myers Cleaners.
5. Location of establishment where work is done? Delphos, Ohio.
6. Owners of establishment where work is done? C. H. Myers.
7. Name of agent or applicant? C. H. Myers.
8. Address of agent? 434 North Main Street, Delphos, Ohio.
9. Name of person upon whom service of summons can be made in the City of Defiance? C. H. Myers, 516 Clinton Street, Defiance, Ohio.
Date: Sept. 19, 1938, C. H. Myers."

"That contemporaneously and at the same time as the application as aforesaid was filed, a check in the sum of Five and 00/100 ($5.00) Dollars, payable to the order of the City of Defiance, Ohio, was filed with said Mayor, with said application, which is as follows, to-wit:

'Delphos, O., Sept. 19, 1938. No. 11784
THE COMMERCIAL BANK
Pay to the
order of    City of Defiance    $5.00
The sum of $5 and 00 cts DOLLARS
By C. H. Myers.'

"That Joe C. Krutsch, as Mayor of the City of Defiance, Ohio, refused to issue to Myers Cleaners, a license as provided in Ordinance No. 1024, as

aforesaid, unless, and as a condition precedent, to the issuance of said license, as required by Said Mayor, that Myers Cleaners should deposit a cash bond in the sum of One Thousand and 00/100 ($1,000.00) Dollars, in accordance with Section 2 of the Ordinance No. 1024, of the City of Defiance, Ohio.

"That C. H. Myers d. b. a. Myers Cleaners refused and still refuses to deposit said cash bond in the sum of One Thousand and 00/100 ($1,000.00) Dollars, in accordance with said ordinance.

"It is further stipulated and agreed the C. H. Myers, d. b. a. Myers Cleaners has qualified and is qualified under §843-19 GC, and subsequent Sections regulating dry cleaning and dyeing establishments.

"It is further stipulated that the principal place of business of Myers Cleaners is in the City of Delphos, Ohio; that Myers Cleaners maintains and operates in the City of Defiance, Ohio, an agency, where an agent is employed for the receiving of garments, etc.; to be cleaned and pressed, etc., by said Myers Cleaners; that customers or patrons of Myers Cleaners may and do take their garments to such agency, and/or may and do call such agency, and the agents of Myers Cleaners, will call for and deliver the garments, etc. to the customers or patrons, after the same have been processed by Myers Cleaners; that Myers Cleaners by and through its agents, does in the City of Defiance, Ohio, solicit business by going form house to house for this purpose; that all dry cleaning, etc. is performed at the principal place of business of Myers Cleaners in the City of Delphos, Ohio, and that all dry cleaning and pressing as received in the City of Defiance, Ohio, by the agents of Myers Cleaners is conveyed to and from said City in trucks as owned by Myers Cleaners.

"That Myers Cleaners has for approximately seven years, been engaged in the business of dry cleaning and pressing in the city of Defiance, Ohio, in the manner as above set forth in the preceding paragraph.

"It is further stipulated that the insurance policy as hereto attached, numbered I. M. 794, and as issued by the Niagara Fire Insurance Company of New York, to C. H. Myers d. b. a. Myers Cleaners, is a true and correct copy of said policy now in full force and effect."

The policy of insurance attached as an exhibit to the agreed statement of facts is under its terms effective from the 9th day of June, 1938, at noon, until cancelled, and bears a rider with an effective date of July 1, 1938, purporting to cover in respect to all kinds of lawful goods and/or articles, being the property of others accepted by the assured for processing, while contained in the premises of the assured situate (a) 434-436 North Main Street, Delphos, Ohio; (b) While on the premises of "Branch store".

The policy purports to insure against fire, lightning, theft, pilferage, burglary and/or holdup, including confusion of goods resulting therefrom, and other hazards.

The limits of the liability as defined by the policy are: in storage rooms, vaults and safes, $50,000.00; outside of storage rooms, vaults and safes, $3.000; nor for more than $1,000.00 while in transit.

The plaintiff charges that Sections 2 and 3 of the ordinance are void because violative of provisions of the Constitution of Ohio and the Constitution of the United States.

While the plaintiff does not state in his petition the provisions of the Constitution of the State of Ohio and the Constitution of the United States of America which he claims are violated by the provisions above mentioned, he does set forth such constitutional provisions in his brief filed herein, the same being as follows:

"Article 1: Bill of Rights, Constitution of Ohio. Section 1. All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and

seeking and obtaining happiness and safety."

That part of Section 1 of the Fourteenth Amendment to the United States Constitution which provides that: "No state shall make or enforce any law which shall breach the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

"The right to seek and obtain happiness and safety is one of the inalienable rights of mankind, so declared by the Constitution, and guaranteed by that instrument. The 'pursuit of happiness' has been interpreted as the right to follow or pursue any occupation or profession without restriction and without having any burden imposed upon one that is not imposed upon others in a similar situation." 8 O. Jur. 465. 6 R. C. L. 266. Butchers' Union S. H. & L. S. L. Co. v Crescent City L. S. L. & S. H. Co. 111 U. S. 746, 4 Supreme Court Reporter, 652.

Adopting this definition of "pursuit of happiness", **Sec. I of Art. 1 of the Constitution of Ohio**, above quoted, is the legal equivalent of the last clause of Sec. 1 of the Fourteenth Amendment to the Constitution of the United States, above quoted, as a restriction on the exercise of governmental powers.

The governmental powers which a municipality may exercise are conferred by **Sec. 3 of Art. XVIII of the Constitution of Ohio**, which provides:

"Municipalities shall have authority to exercise the powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations as are not in conflict with general laws."

Police regulations are regulations adopted in the exercise of police power.

"The term 'police power' is not found in the Declaration of Independence, the Federal Constitution, or in the Ohio Constitution. It is judicial invention, and because of its great dimensions, limited only by the Constitution, courts have refused to define it with exactness or precision." 8 O. Jur. 332, 333.

"It may be defined as 'that inherent sovereignty which it is the right and duty of the government or its agents to exercise whenever public policy in a broad sense demands, for the benefit of society at large, regulations to guard its morals, safety, health, order, or to insure in any respect such economic conditions as an advancing civilization of a highly complex character requires."' 8 O. Jur. 333.

"It is a fundamental principle of law that all police regulations must be reasonable, and not arbitrary and oppressive. Neither the state, in the passage of general laws, nor municipalities, in the enactment of local legislation, may make any regulations which are unreasonable. The police power includes anything which is reasonable, necessary, and appropriate to secure the peace, order, protection, safety, good, health, comfort, quiet, morals, welfare, prosperity, convenience, and best interests of the public." 8 O. Jur. 355, 357, 358.

"The fundamental rule, as shown above, is that police regulations must be reasonable. It is generally stated that the means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation. The benefits to society, reasonably to be expected, must not be out of proportion to the restraint imposed and the detriment inflicted on citizens by such restraint. In determining the constitutionality of a statute as measured by the police power, an essential inquiry is whether it is reasonably designed to accomplish a

purpose falling within the scope of the police power." 8 O. Jur. 358, 359.

The provisions of the above ordinance objected to as unconstitutional constitute an exercise of police power, and their validity must be tested by the above mentioned rules applicable to the exercise of police power both by the state and municipalities.

The provisions of Section 2 of the ordinance are not in conflict with the general laws of the state.

Whether the provisions of Section 3 of the ordinance are in conflict with the general laws of the state we will consider later in this opinion, and confine our consideration at this point to the question whether the provisions of either section are violative of the provisions of **Sec. 1 of Art. 1 of the Constitution of Ohio,** or that part of Section 1 of the' Fourteenth Amendment to the United States Constitution, above quoted.

The following general rules are applicable to the consideration of this question.

"A statute or ordinance which confines the right to a license to residents of the state or municipality, or to persons who are residents and have been for a specified period of time, or which taxes the business or occupation of a nonresident in a different manner or at a different rate from that of a resident, or attempts to distinguish between persons engaged in the same business merely on the basis of the location of their business houses, is generally held unconstitutional as a denial of the equal protection of the laws; and this rule applies even where the discrimination operates only within the limits of a municipality." 16 C. J. S. page 1073. O'Connell v Kontojohn, 179 Southern, 802; Hair v City of Humboldt, 299 Pacific, 268, 133 Kansas 67; Ex Parte Baker, 78 S. W. (2) 610, 12 Tex. Cr. 589; City of Edgerton v Slatter, 263 N. W. 83, 219 Wisconsin 381; Whipple v City of South Milwaukee, 261 N. W. 235, 218 Wisconsin 395. 37 C. J. 200, Note 33 (a).

"The constitutional guaranty as to the equal protection of the laws may render invalid statutes and ordinances which effect an unlawful discrimination in favor of a municipality or its inhabitants. Such enactments invalidly attempt to give a preference to a class consisting of residents of a political subdivision of a state. License Laws discriminating between residents and nonresidents of a part of the state, such as a particular municipality, violate equality provisions of the Federal and State Constitutions." 12 Am. Jur. 236.

In line with the foregoing authorities, although not based on constitutional grounds but based upon the ground of unreasonable exercise of the police power by a municipality, is the decision of the Supreme Court in the case of **Sipe v Murphy et 49 Oh St 536,** wherein an ordinance "To regulate and license the sale of goods at auction within the city of Columbus, of goods, wares and merchandise imported into said city for the purpose of being sold at auction", is held void for the reason that it discriminates against goods that are outside the city when the purpose originates to sell them within the corporate limits.

The decision in the case of **Holsman v Thomas, et 112 Oh St 397,** is relied upon by the defendant as establishing a rule contrary to that established by the foregoing authorities, but an examination of the decision discloses that the imposition upon auctioneers of jewelry of regulations different from those imposed by law upon auctioneers of other articles, is sustained by the court upon the ground that "There is a reason for rigid regulation of this business, which does not exist with regard to other kinds of auctions." The reason given being that the public is unable to test the purity of the precious metal upon sale; the public is unskilled in the value of gold and silver and diamonds; scientific tests are necessary to establish the purity of such articles; and the practices followed in selling them by auction, with the competition

which results in the contest, may result in actual fraud upon the property rights of citizens.

No such reason is applicable to the business sought to be regulated by the ordinance in the instant case as the ordinance purports to provide indemnity against loss and destruction of goods and does not purport to and is not designed to protect against fraudulent practices, and consequently the decision mentioned is not contrary to the authorities hereinbefore mentioned as it does not apply to regulatory provisions similar to those upon which said authorities are based, which are of the type involved in this case.

The defendant also relies upon the decision in the case of Ex Parte Mosler et, 8 C. C. 324, as establishing a rule contrary to the rule hereinbefore set forth. This decision upholds the constitutionality of an act of the legislature of Ohio providing that no itinerant vendor of wearing apparel shall advertise, represent or hold forth any sale as bankrupt, insolvent, etc., or closing out sale, or as a sale of goods damaged by smoke, fire, water or otherwise, until he has first represented the facts, under oath, to the secretary of state, deposited five hundred dollars with the secretary, and procured a state and municipal license authorizing such advertisement and sale.

The decision upholding the constitutionality of the act is based upon the same ground as the decision of the Supreme Court in the case in 112 Oh St 397, above mentioned, in that the object of the statute is held to be to prevent fraud as much as may be and to provide indemnity to the public as against damage coming to it from frauds, liable to be practiced by irresponsible persons in the conduct of that particular business or occupation.

The particular business regulated by statute was one in which frauds were liable to be practiced by irresponsible persons on the public in the conduct of the business. It differs in this respect from the business attempted to be regulated by the ordinance in the instant case which is a business wholly legitimate in character conducted in the manner usual and ordinary in that field of business and in the conduct of which the public is not liable to be defrauded any more than it is in any legitimate business so conducted.

Both of the foregoing decisions are based upon the lawful exercise of the police power to prevent fraud on the public and have no application to the exercise of police power where the prevention of such fraud is not involved.

For these reasons and for the reasons hereinbefore given with reference to the inapplicability of the decision in 112 Oh St 397, to the regulatory provisions of the ordinance in the instant case, the decision mentioned not involving regulations of the same character is not contrary to the rules hereinbefore set forth. While Section 2 of the ordinance in question in this case does not require a higher license fee where the establishment where such cleaning or pressing, or both, are carried on is located outside of the city of Defiance, Ohio, than it does where the establishment is located within the city, it does attempt to impose on an applicant for a license not maintaining such establishment within the city, an additional burden by way of requiring such applicant, before a license may be issued, to deposit with the city treasurer a bond in the sum of not less than one thousand dollars cash, conditioned that such applicant, person, firm or corporation, shall well and truly account for all property removed from the city of Defiance, Ohio, for either cleaning or pressing purposes, or both, and in case of loss or destruction, indemnify owners of such property for the value thereof. And the ordinance does not contain any similar requirement on the part of applicants for licenses maintaining establishments in the city, for the indemnification of owners in case of loss or destruction of property.

It is therefore apparent from the provisions of Section 2 of the ordinance that the purpose of the ordinance is not to furnish financial protection to per-

sons securing the services of licensees under the ordinance, but to place an additional burden on applicants for licenses who maintain their establishments outside the limits of the city.

The ordinance therefore constitutes an attempt to distinguish between persons engaged in the same business merely on the basis of the location of their business houses.

The provisions of Section 2 of the ordinance are such that the only end in view authorizing the exercise of the police power of the municipality is that of providing indemnity for loss or destruction of goods to persons availing themselves of the services of licensees under the ordinance, but the means adopted in this section of the ordinance are not suitable to the end in view, as such protection is not provided as to all transactions with all the licensees; and such means are not impartial in operation as persons operating such establishment outside the city limits are discriminated against; and are unduly oppressive upon individuals operating such establishments outside the city limits; and have no real and substantial relation to the accomplishment of any purpose coming within the police power; and interfere with private rights beyond the necessity of the situation. Such provisions therefore do not constitute a proper exercise of police power but constitute a denial of equal protection of the laws in violation of the provisions of **Sec. 1 of Art. 1 of the Constitution of Ohio** and of Sec. 1 of Amendment Fourteen of the Constitution of the United States, and are void.

Section 3 of said ordinance is void for the same reason, and for the further reasons that the subject matter of such section is fully covered by the general laws of Ohio, and the regulations provided in said section are in conflict with the general laws and therefore not within the police power of the municipality prescribed in **Sec. 3 of Art. XVIII of the Constitution of Ohio.**

Said sections being void for the reasons mentioned, an injunction will be issued herein on plaintiff's petition enjoining the defendant from enforcing the provisions of said Sections 2 and 3 against the plaintiff.

CROW, PJ. & KLINGER, J., concur.