LINEN SERVICE CORPORATION OF TEX-
AS et al. v. CITY OF ABILENE et al.

No. 2328.

Court of Civil Appeals of Texas. Eastland.

Feb. 19, 1943.

Rehearing Denied March 12, 1943.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellants.

E. M. Overshiner, of Abilene, for appellees.

FUNDERBURK, Justice.

This is a suit brought by Linen Service Corporation of Texas and William H. Stevenson against the City of Abilene, and certain officials of said City, to enjoin enforcement of an ordinance of said City on the ground that, as to plaintiffs, it is unconstitutional and void. Linen Service Corporation of Texas has three plants or establishments in Texas—one in Fort Worth, one in Dallas and one in Houston. Each such plant, or establishment, consists of a laundry, wherein it launders articles owned by it and with which it services its customers; such service being the

supplying or delivering of clean laundered tablecloths, napkins, towels, coats, linens, dresses, etc., to restaurants, barber shops, beauty parlors, office buildings, doctors, dentists, hotels, tourist camps, hospitals, drug stores, etc. The quantity of laundry supplied in each instance depends upon the usual daily or weekly requirements of the several customers. Cleaned or laundered linens are exchanged for soiled articles, and the price for the service depends upon the quantity of the articles furnished. The Ft. Worth plant operates under the trade name of Ft. Worth Linen Service Company (hereinafter for brevity called the Linen Service Company), which has carried on the linen supply business since July 8, 1939, in the City of Abilene and other cities and towns in this State.

A truck owned by the Linen Service Company and operated by defendant Stevenson, as its servant or employee, is used in that part of the business done in Abilene. About twice a week the truck makes a trip to and from the plant at Fort Worth, taking in the soiled linens for laundering and bringing back supplies of clean linens with which customers throughout the territory (including Abilene) are supplied. In Abilene the truck driver goes about the City, stopping at the various customers' places of business, exchanging clean linens for soiled.

Neither the Linen Service Company nor Stevenson has any place of business in Abilene in the sense of "a building, room, structure or inclosure." The Linen Service Company and Stevenson has about 100 regular subscribers to the service with whom they have been doing an average monthly gross business amounting to $800, with about $40 per month profit.

On January 30, 1942, the duly constituted authorities in said City passed an ordinance entitled: "An Ordinance Making It an Offense for an Itinerant Vendor to Conduct His Business in the City of Abilene without a License; Defining the Term 'Itinerant Vendor'; Prescribing Said License and Fixing a Penalty." One provision of said ordinance is as follows: "That the term 'itinerant vendor' as used herein means and includes all persons, firms, and corporations, as well as their agents and employees, who engage in 'temporary' or 'transient' business in the City

of Abilene." Another provision reads thus: "The term 'temporary' [temporary business], as used herein, includes [the business of] all such persons, firms or corporations who have no building, room, structure or inclosure in said City of Abilene in which to pursue their business; or who, having such building, structure, room or inclosure, and not owning same, have not made definite arrangements for the rental, hire or lease thereof for at least ninety days." Still another provision is that the "word 'transient' [transient business] as used herein means and includes all business as may be operated or conducted by persons, firms or corporations, or by their agents or employees, who reside away from the City of Abilene or who have fixed places of business or have their headquarters in places other than the City of Abilene; or who move stocks of goods, merchandise or samples thereof in to Abilene with the purpose and intention of removing them, or the unsold portions thereof, away from the City of Abilene before the expiration of ninety days; or [the business of] *those engaged in selling or supplying linen services, or such services as laundering, washing or cleaning linens, towels, cloths or clothes, which are laundered, washed or cleaned at a place or places, outside of the City of Abilene and delivered for use in said city.*" (Italics ours.)

It is deemed sufficient to say that the penalties imposed for violations of the ordinance, as well as the costs of procuring licenses, are substantial.

■ We shall assume, without deciding, that the ordinance is not void as to any who come within its provisions, except those, if any, who are subject to the ordinance only because of that one of the several definitions of "transient" [transient business] above italicized; namely, [to repeat] the definition of "transient" [transient business] as meaning and including the business of "those engaged in selling or supplying linen services or such services as laundering, washing or cleaning linens, towels, cloths or clothes which are laundered, washed or cleaned at a place or places, outside the City of Abilene and delivered for use in said city."[1]

■ In the light of its context, this definition, we think, is one which upon its face is arbitrary. The power purportedly

---

[1] To avoid possible misunderstanding, this statement may require some explanation. The title or caption of the ordinance gave notice that only *vendors* were affected by its provisions. The offense declared was for an "itinerant ven-

exercised in the passage of the ordinance is a power relating to "itinerant vendors". The power actually attempted to be exercised is the power to prohibit or impose discriminatory burdens upon a lawful business, which is in no sense the business of a vendor. Can a municipality under a charter power to do a particular thing, do something entirely different merely by employing the simple expedient of an arbitrary definition? For example, in the exercise of a power to construct a bridge, would an ordinance providing for the construction of a golf course be brought within such power by a definition of a bridge to include a golf course?

If the ordinance is valid and applicable to Appellants, made so, as said before, only because of said definition, let us consider briefly its scope of operation and effect. The particular element of the definition in question, (as above indicated in italics), it is to be observed, does not incorporate any of the other elements. If we are correct in the conclusion that this element of the definition is the only one by which appellants would be affected, then we may consider it as though it was the sole definition, or in other words, embracing, in itself all essential elements.

Place of residence (i. e. whether in or out of Abilene) is excluded as an element of the definition. Stevenson resided in Abilene, but it is conceded that he comes within the definition. The Linen Service Company would come within the definition even if its principal office was in Abilene. The offense declared by the ordinance, as limited by the particular definition applicable to appellants, is pursuing without a license, the business of those "engaged in * * * supplying linen services or such services as laundering, washing or cleaning linens or towels, cloths and clothes, which are laundered, washed or cleaned at a place or places, outside of the City of Abilene and delivered for use in said City." It is apparent that the definition includes any and every person, firm, or corporation, whether residing in Abilene, or elsewhere, if "engaged in * * * supplying linen services or such services as laundering, washing or cleaning linens, towels, cloths or clothes", provided only: (1) that the "linens, towels, cloths or clothes are laundered, washed or cleaned at a place or places outside of the City of Abilene", and (2) are "delivered for use in said City." In the last analysis the direct effect of the ordinance upon those, subject to it only because of the definition now under consideration, is to prohibit (unless licensed) the delivery of laundered, washed or cleaned linens, towels, cloths or clothes "for use in said City."

The indirect, but no less certain, effect of the ordinance is to work unjust, arbitrary discriminations prohibited by the constitutional provisions invoked by Appellants. The lowly washerwoman, who, though residing in Abilene, has her wash place outside the City limits, may not, unless she has procured a license, deliver "her wash" to her patrons in said city, thus discriminating against her in favor of the washerwoman who has her wash

---

dor" to conduct his business without a license. Therefore, the word "business", wherever expressed or implied in the definitions of "temporary" [temporary business] and/or "transient" [transient business] can reasonably only be understood to mean, and be limited to, the business of a vendor. The ordinance does not define the word vendor, and hence it must be presumed to have been used in its ordinary sense. In such sense, according to all authority within our knowledge, the meaning of the word, "vendor", or its synonym "seller", does not include anyone who does not sell or offer for sale any property of any kind. It does not include anyone who for a consideration renders only services for another, involving no transfer of the ownership of any property. Under the admitted, or conclusively established, facts the business of Appellant was in no sense a vendor's business, itinerant or otherwise.

Only in a figurative sense, if at all, would one ever correctly speak of selling services. To do so would be analogous to a surgeon selling a patient an operation; a lawyer selling his client an opinion; or a minister selling his congregation his sermons. We would, without hesitation, say that the ordinance by its own terms excluded any implication that would bring appellants within its provisions, but for that part of the definition italicized in the quotation.

For the same reason appellants are not brought within the provisions of the ordinance because of the definition of "temporary" [temporary business]. It is, therefore, unnecessary to show that even if appellants came within such definition of "temporary" [temporary business] the definition would be arbitrary; since under the undisputed evidence the business of appellants was in its nature not temporary, but a permanent business.

500

place in said city. A linen service company, even though a resident of Abilene, if it has its laundering, washing or cleaning done outside said city may not, unless it takes out a license, deliver its laundered, washed or cleaned linens, towels, cloths or clothes for use in said city; thereby discriminating against it in favor of persons, firms or corporations engaged in the same business and differing only in the fact that they have their linens, towels, cloths, or clothes laundered, washed or cleaned inside said city.

 Corpus Juris Secundum under the head of "Discriminations Based on Residence or Citizenship" and not exactly apropos to that subject, but none the less true, says that "Attempts to distinguish between persons engaged in the same business merely on the basis of the location of their business houses, is generally held unconstitutional as a denial of the equal protection of the laws; and this rule applies even where the discrimination operated only within the limits of a municipality." 16 C.J.S. Constitutional Law, page 1073, § 529. The first case cited in support of the text is Ex parte Baker, 127 Tex.Cr.R. 589, 78 S.W.2d 610. Ex parte Baker supports the text and condemns the ordinance under consideration. The decision involves a question of the validity of an ordinance arising in a criminal prosecution. "The spirit of comity that exists between the Court of Criminal Appeals and the Supreme Court," says Justice Sharp in Kadane v. Clark, 135 Tex. 496, 502, 143 S. W.2d 197, 200, "has long been recognized, and each court recognizes the supreme authority of the other court in certain fields." In pursuance of that policy the Supreme Court in the case cited followed the decision of the Court of Criminal Appeals in conflict with a decision of a Court of Civil Appeals. We, therefore, regard Ex parte Baker as authoritative.

We think no useful purpose would be served by discussing supporting authorities. We rest with the citation of the following: Long v. City of Benton, 285 Ky. 526, 148 S.W.2d 701; Bueneman v. City of Santa Barbara, 8 Cal.2d 405, 65 P.2d 884; Ex parte Dreibelbis, 133 Tex.Cr.R. 83, 109 S.W.2d 476; City of New Brunswick, N. J. v. Zimmerman, 3 Cir., 79 F.2d 428; Campbell Baking Co. v. City of Harrisonville, Mo., D.C., 19 F.2d 159; Ward Baking Co. v. City of Fernandina, Fla., D.C.,

29 F.2d 789; Myers v. City of Defiance, 67 Ohio App. 159, 36 N.E.2d 162; Ex parte Beckenstein, Mo.App., 104 S.W.2d 404.

 The rule of presumed validity of an ordinance, in our opinion, has no application to an ordinance which upon its face discloses the fault which renders it obnoxious to the constitution. Such, we think, is true of the ordinance in question. Injury to appellants from its enforcement is certain.

It is, therefore, our conclusion that the judgment of the Court below refusing the temporary injunction should be reversed and remanded with instructions to grant such writ. It is accordingly so ordered.