Herbert, J.
Is the ordinance, Section 14.10 of the Revised Ordinances of the city of Youngstown, a valid and lawful exercise of the police power of the council of the city? Few questions have received more attention, study or consideration by the bench and bar than those arising from the use or attempted use of such power by legislative branches of government.
The term, “police power,” is not found in the Declaration of Independence, the federal Constitution or in the Constitution of the state of Ohio. It is a judicial creation or invention, although courts have deemed it inadvisable or unwise to define it with exactness or precision. 10 Ohio Jurisprudence (2d), 407, Section 332; City of Columbus v. Public Utilities Commission, 103 Ohio St., 79, 135; Myers v. City of Defiance, 67 Ohio App., 159, 169; Sanning v. City of Cincinnati, 81 Ohio St., 142, 153; City of Cincinnati v. Correll, 141 Ohio St., 535, 538.
However, Section 3, Article XVIII of the Constitution of Ohio, provides:
“Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
Police power is inherent in sovereignty and essential to the existence of government and society. Such power is so broad and far-reaching that its purpose is not infrequently defeated by the vice of vagueness or indefiniteness. Courts have also declared statutes and ordinances void by reason of offense to specific constitutional provisions and also where the enactments are so vague that their meaning becomes the creature of guesswork. These are but a few of the instances where courts have struck down attempted exercise of the police power.
The ordinance here in question is set out in an order issued by the appellee Chief of Police of Youngstown, as follows:
“January 17, 1962
“TO ALL MEMBERS OF THIS DEPARTMENT:
“Please note the following Section 14.10 of the City Ordinances.
“It is hereby declared prejudicial to the public good, detri *26 mental to the public morals, and a nuisance for any person to exhibit for the purpose of operating or permit the operation of any machine, device or instrument in the city, of whatever kind or description, by whatever name known or commonly referred to, which tends to encourage gambling or which is adapted, or may readily be converted into one that is adapted, for use in the manner violative of Sections 14.1 to 14.6 of this revision, inclusive, or which registers a score, or which in any manner indicates the result of its operation, and every machine so exhibited or permitted to be operated shall be subject to seizure by any police officer of the city, and no such machine, device or instrument so seized by any police officer of the city, whether under the authority of this section or otherwise, shall be returned to owner or person claiming the same except pursuant to an order of a court of competent jurisdiction.
“Kindly notify any places having such boards, that after Saturday, January 20, 1962, all such boards shall be seized.
“By order of
“[Sig.] Wm. R. Golden,
“William R. Golden
“Chief of Police.” (Emphasis added.)
The appellant challenges the validity of the ordinance, under the following assignments of error:
1. “* * * is so vague, indefinite and uncertain as to constitute a denial of due process of law, and equal protection of the law.”
2. “* * * is in contravention of the federal Constitution, state Constitution and state statutes.”
3. “The ordinance prohibits the possession and use of lawful property.”
4. “The ordinance is arbitrary, discriminatory, capricious and unreasonable.”
5. “The law upon which the trial court based its decision has no application to the case at bar.”
Appellant’s first assignment is well taken. A studied reading of the ordinance discloses areas of vagueness, indefiniteness and uncertainty. How would or could anyone determine the subjective reasoning of a police officer as he endeavors to *27 determine in his own mind whether an instrumentality encourages gambling or whether it does not? Automobile races are popular and doubtless people wager upon the outcome. This is gambling. Such races are not confined solely to racing cars, as there are stock-car races, drag races and numerous other types of contests between automobiles. Should a police officer seize automobiles on the street because they may encourage wagering? Perhaps that is an extreme example but it illustrates the uncertainties that may result from the reasoning or exercise of discretion or judgment by a great number of police officers. There may be disagreement among the officers themselves. The same queries may be directed to the determination of the question as to whether a device, a machine or any instrumentality may be converted or adapted to gambling. The evidence established without contradiction, and the trial court agreed, that the “bowling alley” and “shuffle alley” games were not gambling devices in and of themselves. The evidence disclosed that it was impossible to convert them into gambling devices by changing the mechanism unless the equipment was returned to the shop where perhaps weeks of labor would be required to make possible such a conversion. However, what would be the determination of a police officer? That again introduces conjecture, guesswork, indefiniteness and uncertainty.
10 Ohio Jurisprudence (2d), 448, Section 371, lays down this principle:
“The discretion of the sovereign state, in the exercise of its police power, is fraught with danger to the personal and property rights of private individuals, and the courts have uniformly interfered to restrain the arbitrary and unreasonable exercise of that power to the prejudice of private rights guaranteed by the Constitution of the state. Accordingly, the police power of the state cannot be exercised arbitrarily and unreasonably to affect or unduly interfere with personal rights or private property. The constitutional guaranty of the right of private property would be hollow if all legislation enacted in the name of the public welfare were per se valid. To be truly in the public welfare within the meaning of Section 19 of Article I of the Ohio Constitution, and thus superior to private *28 rights, any legislation must be reasonable, not arbitrary, and must confer upon the public a benefit commensurate with its burden upon private property.
“Arbitrary and unreasonable governmental action in the exercise of the police power lacks due process of law and violates the Fourteenth Amendment to the United States Constitution and is extraconstitutional and void.”
Connally, Commr., v. General Construction Co., 269 U. S., 385, 70 L. Ed., 322, 46 S. Ct., 126, in the first paragraph of the syllabus, states as follows:
“A criminal statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, lacks the first essential of due process of law.”
State, ex rel. Forcheimer, a Taxpayer, v. LeBlond et al., Judges, 108 Ohio St., 41, reads as follows in the first and third paragraphs of the syllabus:
“1. Legislation otherwise valid will not be judicially declared null and void on the ground that the same is unintelligible and meaningless unless it is so imperfect and so deficient in its details as to render it impossible of execution and enforcement; that is to say, so uncertain and indefinite as not to indicate the matter or thing to which it relates or the purpose to be served.”
“3. The courts should not declare a statute void on the ground that it is unintelligible and meaningless in a doubtful case. A proper deference to the legislative branch of the government requires that such questions should be approached with cautious circumsp ection. ’ ’
Frankfurter, J., in his opinion concurring with the majority in Joseph Burstyn, Inc., v. Wilson, Commr. of Education of New York, 343 U. S., 495, at page 532, 96 L. Ed., 1098, 72 S. Ct., 777, remarks:
“* * * the judiciary has no standard with which to judge the validity of administrative action which necessarily involves, at least in large measure, subjective determinations.”
In United States v. Capital Traction Co., 34 App. Cas. (D. C.), 592, 19 Ann. Cas., 68, a statute making it an offense for any street railway company to run an insufficient number of *29 cars to accommodate passengers “without crowding” was held to be void for uncertainty. The court later in its discussion of the Traction Go. case continues in this language:
“What shall be the guide to the court or jury in ascertaining what constitutes a crowded car? What may be regarded as a crowded car by one jury may not be so considered by another. What shall constitute a sufficient number of cars in the opinion of one judge may be regarded as insufficient by another.”
In the case at bar, one police officer may give one interpretation of the language, “tends to encourage gambling,” whereas another may well differ. One police officer may give one interpretation to the language, “or may readily be converted into one that is adapted,” whereas another police officer may have a different opinion. Examples of confusion could be enumerated almost endlessly.
This ordinance is so meaningless, vague, indefinite and uncertain that it is not in the doubtful class. It is quite clear that it is incapable of enforcement fairly and impartially because of a complete lack of any rule, standard or guidance for a police officer to follow.
A consideration of the second assignment of error requires reference to Section 14, Article I of the Constitution of the state of Ohio, and the Fourteenth Amendment to the federal Constitution.
The foregoing provision of the Ohio Constitution is as follows:
“The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.”
The ordinance grants vast powers of seizure to the police officers of the Department of Police of the City of Youngstown. The statutes providing for and controlling search and seizure were given no consideration. It is hardly necessary to discuss this assignment of error further.
The second assignment of error is well taken.
*30 Teegarden v. Foley et al., Motor Vehicles Dealers’ and Salesmen’s Licensing Board, 166 Ohio St., 449, states, in the first paragraph of the syllabus:
“In order to constitute a valid exercise of the police power, legislation must directly promote the general health, safety, welfare or morals and must be reasonable, the means adopted to accomplish the legislative purpose must be suitable to the end in view, must be impartial in operation, must have a real and substantial relation to such purpose and must not interfere with private rights beyond the necessities of the situation.”
Froelich v. City of Cleveland, 99 Ohio St., 376, has the following to say in the third paragraph of the syllabus:
“The state and municipalities may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community. But neither the state nor a municipality may adopt any regulations which are unreasonable. The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation.”
It has been said that the courts have always asserted the right to restrain the exercise of the police power to the extent that private rights may not be arbitrarily or unreasonably infringed. Such cases are within the rights reserved by Section 20, Article I of the Ohio Constitution. Mirick v. Gims, Treas., 79 Ohio St., 174.
The ordinance in part provides:
“Any machine, device or instrument in the city, of whatever kind or description, by whatever name known or commonly referred to * * * which registers a score, or which in any manner indicates the result of its operation * * * shall be subject to seizure by any police officer of the city * * *.” (Emphasis added.)
Practically all athletic contests would come under the ban of this ordinance. Football and basketball, high-school or otherwise, baseball, golf, tennis, in fact any game which requires that a score be kept or registered would be subject to *31 seizure by a police officer. Were such drastic powers used, the damage to private property would run into tremendous sums of money. The investment in Youngstown in bowling alleys alone no doubt runs into scores of thousands of dollars. The trial court itself concluded that bowling alleys came under the ban of the ordinance.
The last assignment of error claims that:
“The law upon which the trial court based its decision has no application to the case at bar.”
Although the bare statement is correct, nevertheless it was not error, rather it was a mistake. The brief of the appellees strongly emphasizes Benjamin v. City of Columbus, 167 Ohio St., 103, and both the trial court and the Court of Appeals placed complete reliance upon that authority.
In the Benjamin case, the owners and operators of pin-game machines brought actions to determine the validity of three Columbus ordinances. One of those Columbus ordinances, No. 156-53, was similar to the Youngstown ordinance under consideration in the instant case. However, this court, in deciding the Benjamin case, found it unnecessary to pass upon the validity of that ordinance. This is clear from the opinion where it is stated (pages 107 and 118) :
“* * * although complaint is made with respect to vagueness, indefiniteness and uncertainty of some parts of these thre?e ordinances, no such complaint is made with regard to the provisions of * * * the 1954 ordinance, which makes it a misdemeanor to possess within the city or to control a ‘pin game * * * the operation, use or play of which is controlled by placing therein any coin.’ The allegations of plaintiffs’ petitions either are or necessarily indicate that plaintiffs ’ business is the ownership, exhibition and rental to others for exhibition and use in Columbus of just such pin games. It is apparent therefore that plaintiffs neither contemplate nor suggest any possession in Columbus by anyone of the machines involved in the instant cases that will not necessarily amount to what is specified as a misdemeanor by that ordinance. Hence, unless plaintiffs can establish the invalidity of that ordinance, their petitions must be dismissed.”
At page 118, the opinion continues:
*32 “Arguments have been made with respect to the validity and interpretation of other provisions of the three Columbus ordinances involved in the instant cases. However, in view of our conclusion that the allegations of plaintiffs’ petitions and the provisions of the 1954 ordinance (No. 1615-54) require dismissal of plaintiffs’ petitions, anything that we might say with respect to other provisions of those three ordinances or their validity would represent the consideration of something not necessary to sustain the judgments being rendered and hence might be considered as dicta.”
The ordinance in the case at bar has no similarity whatsoever to the ordinance which was under consideration in Benjamin.
The judgment of the Court of Appeals is reversed.

Judgment reversed.

Taft, C. J., Zimmerman, O’Neill, Griffith and Gibson, JJ., concur.
Matthias, J., not participating.