

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

October 14, 1965

Honorable H. C. Heldenfels
President of the Board
The Texas A & M University System
College Station, Texas

Opinion No. C-525

Re: Coeducational status of
Texas A & M University.

Dear Mr. Heldenfels:

Your request for an opinion of this office concerns the policy of the Board of Directors of the Texas A & M University System in allowing wives and daughters of staff members, and students and widows and daughters of deceased staff members to enter the undergraduate day school. You seek interpretation in the light of the Federal Civil Rights Act of 1964 and in the light of the equal rights (equal protection) provisions of the State and Federal Constitutions.

Title IV of the Civil Rights Act of 1964 pertains to desegregation of public education. Section 410 provides:

"Nothing in this title shall prohibit classification and assignment for reasons other than race, color, religion, or national origin."

Although the privilege of admission to a publicly supported institution is a civil right, in view of the express provisions above quoted, you are advised that the Civil Rights Act of 1964 does not require Texas A & M University to admit female students.

In order to ascertain your constitutional position we must first determine the status of the rule adopted by the Board of Directors. In Foley v. Benedict, 122 Tex. 193, 55 S.W.2d 805 (1932), speaking of the powers of the Board of Regents of the University of Texas, the Supreme Court of Texas stated:

". . . Since the board of regents exercises delegated powers, its rules are of the same force as would be a like enactment of the Legislature, and its official interpretation placed upon the rule so enacted

-2468-

> becomes a part of the rule. West Texas Compress & Warehouse Co. v. R. Co. (Tex.Com.
> App.) 15 S.W.(2d) 558,560."

This case goes on to provide:

> ". . . The Legislature of this state not
> having provided who shall be admitted to the
> University, and having delegated the power to
> make rules and regulations necessary to the
> government of the University, to the board of
> regents, they are invested with the power of
> determining what classes of persons shall be
> admitted to the University, provided that the
> rules and regulations in that regard must be
> reasonable and not arbitrary. . . So the courts
> are usually disinclined to interfere with regu-
> lations adopted by school boards and they will
> not consider whether the regulations are wise
> or expedient, but merely whether they are a
> reasonable exercise of power and discretion
> of the board. . . ." (Emphasis added.)

Next we must determine the class to whom the rules apply. Foley v. Benedict, ibid, states:

> "A student who is admitted to the Uni-
> versity receives the privilege of attending
> that institution subject to the reasonable
> rules and regulations promulgated by the
> board of regents existing at the time of
> his entrance into the school. The educa-
> tional facilities of state-supported insti-
> tutions of higher learning are at the dis-
> posal of the average student engaged in a
> particular field of study, and a standard
> of excellence which the average student in
> a particular field of study is able to
> satisfy is not an unreasonable regulation. .
> . ." (Emphasis added.)

Hence we see that the right to attend a school attaches to the student and any classification established must be based upon the qualification of the student and not some person to whom the student may be related by affinity or consanguinity.

The authority of the Board of Directors to exclude female students from Texas A & M University is governed by

the principles of law announced in Heaton v. Bristol, 317 S. W.2d 86 (Tex.Civ.App. 1958, error ref.) cert.den., app.dism., 79 S.Ct. 802, 359 U.S. 230, reh.den. 70 S.Ct. 1123, 359 U.S. 999, and Allred v. Heaton, 336 S.W.2d 251 (Tex.Civ.App., error ref., n.r.e.) cert.dism., app.den. 81 S.Ct. 293, 364 U.S. 517, reh.den. 81 S.Ct. 459, 364 U.S. 944. It is clear that the Board of Directors of the Texas A & M University has the right, at any time, to cause the student body at the University to be either all male or fully coeducational.

The present policy of the Board of exclusion of student applicants for the sole reason that said applicants are not wives or daughters of staff members or students, or widows or daughters of deceased staff members, is, in our opinion, discriminatory and an unreasonable class distinction. There may be other facts and reasons for the limited class distinction that have not been called to our attention.

In undertaking to determine whether or not the Board of Directors has the authority to establish a limited classification of females who shall be eligible to attend Texas A & M University, it would be necessary to have a fact determination on which to base the underlying rules for such classification. This is a function which can only be performed in a court of law. The Attorney General's office does not have available to it any method of fact determination. (See attached copy of Opinion Request Procedure for State Officers, Agencies, Boards and Departments.) We can, therefore, only furnish you with the guiding principles of law upon the basis of which you may make the initial fact finding.

The policy of admitting female students on a competitive basis to the graduate school or to courses not offered in any other state-supported institution (such as veterinary medicine) in no way affects the principles enunciated in this opinion.

In view of the recent decision of the Supreme Court of Texas in Texas State Board of Examiners in Optometry v. Carp, 388 S.W.2d 409 (1965), an applicant for admission to the Texas A & M University who is denied admission by virtue of an order of the Board of Directors has the burden of showing that the administrative order does not have reasonable support in substantial evidence.

Article 1, Section 3 of the Texas Constitution provides:

-2470-

"All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

Article 1, Section 19, says:

"No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Speaking of the issues of constitutional validity of a statute in the light of these two provisions, the Supreme Court of this State has said:

"We recognize that the test is whether there is any basis for the classification which could have seemed reasonable to the Legislature. . .Before we may strike it down it must appear that there is no reasonable relationship between the classes created and the purposes to be accomplished or the evils to be prevented."  San Antonio Retail Grocers v. Lafferty, 156 Tex. 574, 577-578, 297 S.W. 2d 813, 815-816 (1957).

The constitutional purpose of Texas A & M University is set forth in the first sentence of Article 7, Section 13 of the Texas Constitution:

"The Agricultural and Mechanical College of Texas, established by an Act of the Legislature passed April 17th, 1871, located in the county of Brazos, is hereby made, and constituted a Branch of the University of Texas, for instruction in Agriculture, the Mechanic Arts, and the Natural Sciences connected therewith. . . ."

The Legislature has defined this constitutional object by the enactment of Article 2608, Vernon's Civil Statutes, which reads as follows:

"The leading object of this College shall be without excluding other scientific and

classical studies, and including military
tactics, to teach such branches of learning
as are related to agriculture and the me-
chanical arts, in such manner as the legis-
lature may prescribe, in order to promote
the liberal and practical education of the
industrial classes in the several pursuits
and professions in life."

In Linen Service Corporation v. Abilene, 169 S.W.2d
497 (Tex.Civ.App. 1943, error ref.), the Court held void a city or-
dinance imposing a license fee on suppliers of linen service
if the washing was done outside the city limits, saying:

"A linen service company, even though a
resident of Abilene, if it has its laundering,
washing or cleaning dones outside said city
may not, unless it takes out a license, de-
liver its laundered, washed or cleaned linens,
towels, cloths or clothes for use in said city;
thereby discriminating against it in favor of
persons, firms or corporations engaged in the
same business and differing only in the fact
that they have their linens, towels, cloths,
or clothes laundered, washed or cleaned in-
side said city.

"Corpus Juris Secundum under the head of
'Discrimination Based on Residence or Citizen-
ship' and not exactly apropos to that subject,
but none the less true, says that 'Attempts
to distinguish between persons engaged in the
same business merely on the basis of the lo-
cation of their business houses,' is generally
held unconstitutional as a denial of the equal
protection of the laws; and this rule applies
even where the discrimination operated only
within the limits of a municipality." 169 S.
W.2d at 500.

The same sort of vice has been recognized and struck
down by the Court of Criminal Appeals.

In Ex parte Dreibelbis, 133 Tex.Crim. 83, 109 S.W.2d
476, 497 (1937), the Court of Criminal Appeals, in holding in-
valid a licensing ordinance imposing a license fee on a "tempo-
rary merchant" but exempting those in business in the city for
a year or more, said:

"That the ordinance in question is dis-
criminatory is clearly demonstrated by the
fact that a person who has been engaged in
one of the designated businesses in said city
for a year or more is exempt from the payment
of the tax, while another person who has been
so engaged for such length of time is subject
to the payment of the tax, and, for his failure
to do so, punishable by fine, although both
parties may be engaged in the same kind of
business, carrying the same kind and the same
amount of merchandise. If this is not discrim-
ination, then what is it."

The question of whether or not a student can acquire
a derivative legal right by reason of parentage or marriage is
disposed of by the following statement in 12 Tex.Jur. 453,
Constitutional Law, Sec. 103:

"In prohibiting exclusive separate public
emoluments or privileges except in consideration
of public services the constitution declares the
principle of equality in political rights and a
denial of title to individual privileges, honors,
and distinctions except for public services. The
provision is directed against superiority of
personal and political rights, distinctions of
rank, birth, or station; and all claims of emol-
uments by any man or set of men over any other
citizen. It declares that honors, emoluments,
and privileges of a personal and political
character are alike free and open to all the
citizens of the state."

Ordinarily there is a presumption of constitutionality
when an attack is made upon a statute, but the right in question
here, i.e., the right to attend a state-supported institution
of higher education, is a civil right (although not covered spe-
cifically by the Civil Rights Act of 1964). The Supreme Court
of the United States has said:

"There is no presumption in favor of the
constitutionality of any regulation involving
civil rights." Schneider v. State of New
Jersey, 308 U.S. 147 (1939).

Perhaps the best exposition of the inability to create
arbitrary class legislation is contained in Ex parte Smythe, 28

S.W.2d 161 (Tex.Crim. 1930), where question was raised as to the right of the City of Marshall to make it unlawful for a person engaged in the business of lending and collecting money, from transacting any part of that business on the streets of that city. The Court pointed out that the grocer could collect his bill on the city streets while the banker might make no mention of a past due note.

In view of the foregoing, there is a serious legal question as to whether or not, on a trial in court, we could successfully defend an attack upon the present classification established by the Board of Directors for admission of female students as being a reasonable classification. We would like to point out, however, that even if this classification were successfully attacked in court the Board of Directors would still have full authority to make Texas A & M University either all male or completely coeducational without any prejudice to such authority having arisen from the present system of limited classification.

## SUMMARY

1. The Civil Rights Act of 1964 is not applicable to rules and regulations of Texas A & M University insofar as discrimination by sex is concerned.

2. The Board of Directors of Texas A & M University has the unquestioned right to issue rules and regulations making the University either all male students or all coeducational.

3. The present policy of the Board of exclusion of student applicants for the sole reason that said applicants are not wives or daughters of staff members or students, or widows or daughters of deceased staff members, is, in our opinion, discriminatory and an unreasonable class distinction.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

Honorable H. C. Heldenfels, page 8 (C-525)

By: *Howard M Fender*

HOWARD M. FENDER
Assistant Attorney General

HMF/br

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Sam Kelley
James Strock
Vince Taylor
Jerry Brock

APPROVED FOR THE ATTORNEY GENERAL
By:  T. B. Wright

## OPINION REQUEST PROCEDURE

To District and County Attorneys and County Auditors of Texas:

This memorandum details the opinion request procedure of the Attorney General's Office, and it is distributed to facilitate a mutual understanding between the Attorney General and those officers entitled to secure his opinions.

1. County Auditors opinion requests should be submitted to the County or District Attorney in accordance with the provisions of Article 334 of Vernon's Civil Statutes. If the County or District Attorney fails or refuses to answer the Auditor's request, or if the County Auditor, County Judge or any officer affected by the opinion disagrees with the County or District Attorney's opinion, or believes that it is in conflict with former opinions of the Attorney General's Office, then this department will accept an opinion request direct from the County Auditor.

2. County and District Attorneys and Criminal District Attorneys should request opinions in accordance with Article 4399 of Vernon's Civil Statutes. The request should give a complete statement of facts rather than a hypothetical question, and the County or District Attorney should not submit the request if the same is involved in either civil or criminal litigation. Further, the officer requesting the opinion should file a complete brief with his request, giving the conclusions of the briefer and the reasons which support his views. If the County or District Attorney briefs the questions very carefully at the local level, he will resolve a multitude of problems without calling on this office for aid and assistance. However, if his opinion does not settle the question, then his brief will be of invaluable assistance to the Attorney General and the members of his staff.

3. Regardless of whether the opinion request is submitted by the County Attorney, District Attorney, Criminal District Attorney or County Auditor, it must clearly appear that the requester has an official interest in the subject matter involved and that the official or officials are not just asking the question for their own information and enlightenment. Questions involving cities or independent school districts and the like should not be submitted unless they concern a subject covered by the jurisdiction and duties of the office of the official submitting the question.

This practice will enable our office to render quicker and better service on legitimate requests for opinions, and your full and complete cooperation will be greatly appreciated.

Yours very truly,

Attorney General of Texas