RICHTER CONCRETE CORP., APPELLANT, *v.* CITY OF READING ET AL., APPELLEES.[*]

---

[*]Judgment affirmed, 166 Ohio St., 279.

(No. 8125—Decided May 28, 1956.)

*Mr. Nicholas Bauer* and *Mr. Robert C. Martin,* for appellant.

*Mr. John P. Bok,* city solicitor, for appellees.

Matthews, J. The notice of appeal in this case recites that the appeal is on questions of law and fact, but, as no bond on appeal was filed, the appeal can be considered upon questions of law only. However, as there is a complete bill of exceptions on file and the parties agreed to consider the appeal on the evidence therein without any additional evidence, the scope of the review is not materially changed, particularly in view of the fact that there is no dispute on any material fact.

The plaintiff, whose place of business is located in the city of Cincinnati, Ohio, owns and operates several concrete-mixer trucks having a gross weight, including load, in excess of 20,000 pounds, which it operates in and over the streets of the defendant, city of Reading. On three separate occasions, the defendant, city of Reading, caused three of its employees to be arrested, threatens to punish them for violating a certain ordinance of the city, and threatens, and will continue, to arrest the plaintiff's employees for violating the ordinance, unless restrained, notwithstanding, as claimed by the plaintiff, the ordinance is null and void because it violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, and Section 2 of Article I of the Constitution of the state of Ohio.

A temporary restraining order was issued upon filing the action, but, upon final hearing, this was dissolved and final judgment entered for the defendants. It is from that judgment that this appeal is taken.

The ordinance in question in this case is Ordinance No. 918-1954 of the city of Reading, which provides:

"Section I: That it shall be unlawful for any person, part-

nership, firm or corporation to operate any vehicle or vehicles on any of the public streets within the boundaries of the city of Reading, Ohio, containing a gross weight, including load, in excess of 20,000 pounds, *excepting* for the purpose of loading or unloading said vehicles at a residence, place of business or industry within the boundaries of the city of Reading, Ohio, which shall include ordinary deliveries to any of such places, and *excepting also* for the purpose of traveling to or from a residence, place of business or industry where said vehicle or vehicles are registered or hired and excepting also for the operation of vehicles over Reading Road, a state highway.

"Provided further, that the gross weight, including load of any vehicle or vehicles, shall include the gross weight of any trailer or trailers attached to any vehicle or vehicles, together with load." (Emphasis added.)

The ordinance was declared to be an emergency measure, the emergency "being that vehicles of the type restricted herein are damaging streets and endangering the safe movement of persons and other vehicles."

It will be observed that the ordinance excepts certain activities from its operation. The first exception is of vehicles engaged in loading and unloading at a residence, place of business or industry within the boundaries of the city of Reading. The second exception is of vehicles while in use for traveling to or from a residence, place of business or industry, where the vehicle is either registered or hired. The third exception is of vehicles operated on and over Reading Road, a state highway within the corporate limits of the city of Reading.

Taking these exceptions together, it is found that the restricting provision is made to apply to all instances excepting to vehicular travel having one or the other terminus within the territorial limits of the city of Reading, excepting travel on Reading Road, a state highway. In other words, all through travel except on Reading Road is penalized if the vehicle weighs more than 20,000 pounds, whereas, transportation having its beginning or ending, or both, within the city of Reading is left free regardless of the weight of the vehicle. In other words, the ordinance, with its restrictions and penalty, is made to apply solely to through traffic.

There is no doubt that a municipality, both by virtue of its proprietary interest in the streets and, also, by virtue of the police power conferred upon it by Sections 3 and 7 of Article XVIII of the Constitution of the state of Ohio, has the authority to pass all manner of ordinances to promote the health, morals, safety, and general welfare of the people within its borders and particularly in relation to the streets and highways located therein, and, by Section 723.01, Revised Code, is charged with the duty of keeping such streets open, in repair, and free from nuisance. But in so doing, municipalities, like all other governmental agencies, are required to keep within constitutional limitations imposed upon them by the people themselves for their protection against arbitrary and discriminatory action. Equality before the law is required of all branches and agencies of government, state and national. It is imposed by both the Constitutions of the United States and the state of Ohio. In 12 American Jurisprudence, 129, Section 469, it is said on this subject that:

"Although the courts have recognized the unwisdom of attempting to delimit precisely the equal protection clause, various broad and sweeping generalizations and statements as to the meaning of this important part of the federal Constitution have from time to time been enunciated. It has been repeatedly said that the guaranty of the equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances, in their lives, liberty, and property, and in pursuit of happiness. It has frequently been stated that 'the equal protection of the laws is a pledge of the protection of equal laws.' One court has added the concept that it means equality of opportunity to all in like circumstances. The guiding principle most often stated by the courts is that this constitutional guaranty requires that all persons shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed."

This requirement of equal treatment, however, does not prevent proper classification for the purpose of legislation. On the subject of classification, it is said in 12 American Jurisprudence, 140 *et seq.*, Section 476, that:

"The equal protection clause of the Fourteenth Amendment does not intend to take from the states the right and power to classify the subjects of legislation. It does not prohibit or prevent classification, provided such classification of persons and things is reasonable for the purpose of legislation, is based on proper and justifiable distinctions, considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or unduly to burden another or to oppress unlawfully in its administration. Proper classification is distinctly contemplated by this amendment."

Now, what was the avowed purpose of this ordinance? In the emergency clause it is recited that vehicles weighing 20,000 pounds or more are damaging streets and endangering the safe movement of persons and vehicles. Any classification must be reasonable in view of that declared purpose and must affect equally all within the class created, and the class must include all who are similarily situated in relation to the object or purpose of the ordinance.

The objection to this ordinance is that it imposes restrictions and penalties on those using the streets engaged in through traffic and imposes no such regulation upon those using the streets for other than through traffic, notwithstanding such traffic imposes the same stress upon the streets and creates the same hazards. It is, therefore, assailed as a purely arbitrary classification.

We have been furnished no basis for this distinction between through traffic and other traffic—and we can think of none.

It is clear that the mere fact that traffic may have terminated outside the municipality is not a valid basis of classification.

In 12 American Jurisprudence, 236, Section 538, we find, on this subject, the following:

"The constitutional guaranty as to the equal protection of the laws may render invalid statutes and ordinances which effect an unlawful discrimination in favor of a municipality or its inhabitants. Such enactments invalidly attempt to give a preference to a class consisting of residents of a political subdivision of a state. License laws discriminating between resi-

dents and nonresidents of a part of the state, such as a particular municipality, violate equality provisions of the federal and state Constitutions. Accordingly, statutes imposing a license on a business, but exempting therefrom citizens of the town in which the business is conducted and also persons residing or paying taxes therein, have been held to be invalid by reason of the making of a discrimination not permitted under the Fourteenth Amendment to the federal Constitution. The exception from a statute requiring the licensing and bonding of wholesale dealers in produce, of local groups composed of individuals residing in the same county, which buy principally from such individuals, is unconstitutional as constituting an arbitrary and unwarranted classification.''

It has been suggested that as the ordinance permits anyone to engage in either or both forms of use of the highway, or permits anyone to leave one class and enter the other, that satisfies the requirement of uniform treatment. That, however, does not satisfy those of the class who do not desire or are unable to engage in a different use of the street. The fact that the membership of a class is fluctuating does not place them beyond the protection of the Constitution.

The nearest Ohio case on its facts which we have found is *Myers* v. *City of Defiance*, 67 Ohio App., 159, 36 N. E. (2d), 162. We quote the first paragraph of the syllabus:

''A municipal ordinance requiring all persons, firms or corporations, engaged in the business of dry cleaning and pressing, to secure a license, and, when a dry cleaning and pressing establishment is located outside of the municipality, as a prerequisite to the issuance of a license, requiring the owner or operator thereof to give a $1,000 cash bond, conditioned that all property removed from the municipality will be accounted for, imposes an excessive and unjustifiable burden on dry cleaning establishments located outside the municipality and violates both Section 1, Article I of the Ohio Constitution, and Section 1 of the Fourteenth Amendment to the federal Constitution.''

Appellee's counsel relies on *Froelich* v. *City of Cleveland*, 99 Ohio St., 376, 124 N. E., 212, as sustaining the validity of this ordinance. It is a precedent for the power of a municipality to

pass an ordinance to protect its streets, but is no authority for the power of a municipality to pass any particular ordinance. The only question in that case was as to the power of municipalities under the constitution and statutes. It is no authority for the power of a municipality to pass an arbitrary, unreasonable, or discriminatory ordinance. This is made clear by the statement of the court on page 391, which we quote:

"It must be remembered that neither the state in the passage of general laws, nor the municipality in the passage of local laws, may make any regulations which are unreasonable. The means adopted must be suitable to the ends in view, they must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation."

For these reasons, the judgment is reversed and final judgment entered for the plaintiff, and the cause is remanded to the trial court for execution.

*Judgment reversed.*

Ross, P. J., and Hildebrant, J., concur.