JANOVIAK et, Plaintiffs-Appellants, v. CREGAN et, Defendants-Appellees.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24864.  Decided November 27, 1959.

A. A. Perelman, Thomas McGarry, for plaintiffs-appellants.
Ford, Clarke, Howland & Wegman, for defendants-appellees.

## OPINION

By SKEEL, J.

This appeal comes to this court on questions of law from a decree for the defendants entered after trial on the merits by the Court of Common Pleas of Cuyahoga County.  The action is one wherein the plaintiffs seek to restrain the Village of Bratenahl, its Chief of Police, and Mayor from restricting the use of that part of the Lakeland Freeway which passes along the southern border of the Village to passenger automobiles.

The plaintiffs' amended petition alleges that they are a partnership engaged in the business of furnishing automatic machine tool services to industry.  That they service industrial establishments engaged in defense work for the Government of the United States and also those dealing in products to be shipped in interstate commerce and that in servicing such customers, they use a 1948 one-half ton panel body truck.

It is alleged that the defendant, William D. Cregan, is the Chief of Police of the Village and that the defendant, William Klein, is its Mayor. It is alleged that there is an east and west thoroughfare running through the Village described as the Lakeland Freeway (a limited access highway) which runs along its southerly border for about three miles except for the most easterly one eighth of a mile which turns a bit to the north and meets Lake Shore Boulevard where the easterly border of the Village adjoins the City of Cleveland. The petition alleges that the freeway is a six lane concrete highway with a dividing strip between the east and west bound lanes, said grass strip being about thirty feet wide and that the New York Central Railroad's main tracks run along the southerly border and adjacent to the freeway until the freeway turns toward Lake Shore Boulevard some distance past Eddy Road, and to the immediate south of such railroad right-of-way are many industrial plants.

It is alleged that on October 1, 1958, the plaintiff, James P. Janoviak, while in pursuance of his business (making deliveries with the partnership's one-half ton panel truck), was arrested at 11:45 A. M. for driving a truck on the freeway in violation of an ordinance of the Village of Bratenahl. The ordinance is then set out in the amended petition which was filed December 13, 1958, and by amendment upon oral motion, an amended Ordinance (No. 1483) passed December 17, 1958, was substituted for the one pleaded which provides, in part, as follows:

"SECTION 1. That Section 26 of Ordinance No. 805, passed on the 10th day of October, 1938, as amended, shall be and hereby is further amended to read as follows:

"When signs are erected giving notice thereof, those parts of Lake Shore Boulevard and of the Lakeland Freeway which are within The Village of Bratenahl shall be and hereby are designated as restricted traffic thoroughfares and the operation thereon of any tractor, or truck or trailer or other vehicle designed or used to carry property, or for building or construction work, excepting vehicles of The Village of Bratenahl, The City of Cleveland, The County of Cuyahoga and the State of Ohio, or any department thereof, while performing work or going to or from the performance of work on such streets, and excepting vehicles doing work or receiving goods or making deliveries in the Village of Bratenahl in Bona Fide transactions, which vehicles shall enter and leave such restricted thoroughfares by the shortest route, shall be and hereby is forbidden."

"SECTION 2. Any person who violates the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined for a first offense not to exceed $50.00 and the cost of prosecution, and for a second or subsequent offense not to exceed $100.00 and the cost of prosecution."

It is further alleged that the Village Ordinance prohibiting all truck traffic on that part of the Lakeland Freeway situated in the Village is "null and void, arbitrary, discriminatory, and capricious, because it violates the commerce, due process, and equal protection clause of the

Constitution of the United States, and **Section 2, Article I, Ohio Constitution.** The plaintiffs allege that the law enforcing officers of the Village threaten to make further arrests of the plaintiffs and those driving trucks on the freeway in Bratenahl and pray for a permanent injunction prohibiting the defendants from interfering with the plaintiffs in the operation of their truck on the freeway in said Village.

The defendants, by joint answer to the plaintiffs amended petition, admit that Bratenahl is a Village; that defendant, Klein, is the duly elected Mayor of such Village, and that defendant, Cregan, is the duly appointed and acting Chief of the Police Department. The location of the Village and the freeway, as described, is admitted, as well as the amended ordinance (1483) as pleaded by agreement. It is then alleged that said ordinance "is necessary to prevent traffic congestion and that it bears a direct relationship to the public safety and welfare."

The evidence, in addition to the Admissions, establishes that Bratenahl is a compact community situated on Lake Erie and bounded on its east, west and south boundaries by the City of Cleveland. It is about four or five miles east of the Center of Cleveland. It is about three miles long and comprises within its limits about one and one-half square miles of land devoted exclusively to residence purposes. Lake Shore Boulevard is an east and west street running the entire length of and beyond the Village to the east, and is the first street south of the Lake. It is somewhat crooked and marked off for three lanes of traffic. The west entrance to Lake Shore Boulevard is reached through the roadways of Gordon Park north of the freeway in Cleveland and at its eastern extremity, it runs directly into and continues on as Lake Shore Boulevard in Cleveland. At this point and to the east, it is a six lane highway, each lane being about ten feet in width. The freeway joins Lake Shore Boulevard a short distance west of the Cleveland border. The Village maintains a traffic light at the point where the freeway meets Lake Shore Boulevard. The first street east, which is near the boundary line of the Village, within the City of Cleveland, is East 140th Street. This street dead ends at the Boulevard, the intersection being controlled by a traffic light. The freeway is a limited access highway providing six lanes of traffic, three for eastbound traffic and three for westbound traffic, each lane being about twelve feet in width. The east and west lanes are divided by a thirty foot grass strip. The Lakeland Freeway is a continuation of the Memorial Shoreway in Cleveland which, except for the new Inner Belt Intersection where six traffic lanes are provided, is a limited access highway, providing eight traffic lanes, and as in Bratenahl, the state speed law provides a prima facie lawful rate of speed of fifty miles per hour. There is no restriction of truck traffic, except as to weight on Memorial Shoreway from West 49th Street east to the city limits at the west boundary line of Bratenahl and also on Lake Shore Boulevard east from Bratenahl to the city limits of Cleveland at East 185th Street.

The evidence also shows that there is now under construction (as was originally contemplated) an extension of the freeway to East

185th Street at the east border of Cleveland so that when the extension is finished, through traffic will be able to move east and west on the freeway without going into or coming from Lake Shore Boulevard just west of East 140th Street. The Mayor testified on this point that when such extension is finished, no problem of traffic congestion will then exist in the Village because of the freeway ending as it now does at Lake Shore Boulevard. The Mayor testified that the extension was a state project to which the Village had given its consent and that construction is now in progress.

The Village, located as it is between the New York Central Railroad tracks (and now the freeway) and Lake Erie, has only three avenues of ingress and egress, one from Lake Shore Boulevard on the east, one from Gordon Park reaching the west end of Lake Shore Boulevard in the Village, and one by the use of Eddy Road, a north and south thoroughfare which intersects Lake Shore Boulevard in about the center of the Village and (by a bridge) passes over the freeway, Eddy Road beginning at the Lake, proceeds completely across the Village going south to St. Clair Avenue in Cleveland and beyond, with ramps running to the east and west from the Eddy Road overhead bridge on both sides of the freeway, which in effect creates a cloverleaf.

The evidence is uncontradicted that the purpose of the ordinance, in eliminating all truck traffic from Lake Shore Boulevard and the freeway in Bratenahl, was to relieve congestion. Historically, the first ordinance dealing with the subject was passed in 1938 (long before the freeway was constructed) primarily to keep truck traffic from Lake Shore Boulevard which was then the only east and west street through the Village. The amendment of 1948 included the freeway but excluded from its operation vehicles of Bratenahl, Cleveland, and those of the state and county. This ordinance became effective at about the time the freeway was opened by the county. The amendment, effective Dec. 17, 1958, excluded all through truck traffic.

The testimony of the Chief of Police was to the effect that the only way to distinguish a truck from a passenger automobile is by the license plates, that if a station wagon displaying truck plates were used on either the freeway or Lake Shore Boulevard, without having business to transact in the Village, the driver would be subject to arrest. He said this would also be true where a passenger automobile had attached thereto and was pulling a trailer upon which was loaded a small boat.

The evidence is also without contradiction that the only traffic congestion on the freeway and Lake Shore Boulevard is as to eastbound traffic between the hours of 4:30 and 6:00 P. M. at the easterly end of the freeway where it meets Lake Shore Boulevard.

Fakult, a councilman of the City of Cleveland, testified as follows on this point:

"Well, I am familiar with the traffic generally in there. It is part of my job to understand traffic and problems that generate to the community and I am aware of the fact, through complaints that I have received about the volume of traffic, the fact that traffic backs up be-

yond Eddy Road, which is about two miles away from East 140th Street and that is, of course, the basis where the extension of the Lakeland Freeway, which is now under construction, which is going to be under construction shortly.

"* * *

"Q. Then, as I understand your testimony, the traffic congestion on Lakeland Freeway would be more severe than it would be on St. Clair?

"A. During the rush hour it would be.

"* * *

"Q. Traveling from an easterly direction to a westerly direction using the northbound lanes heading toward the center of Cleveland, what is the condition of traffic there?

"A. Well, that is not usually—it's not as bad as it is the other way.

"Q. Now, what is the condition of the traffic during the earlier parts of the day, let's say at 9 o'clock in the morning?

"A. There is no particular problem.

"Q. And at 12 o'clock there is no particular problem and at 3 o'clock?

"A. No.

"Q. And it's about 4:30 or 5, isn't it, that traffic congests at the eastern end for those heading in an easterly direction, is that not a fact?

"A. That's correct.

"* * *

"Q. Now, then, from the point of the signals and at the exit of the Village of Bratenahl, can you compare the degree of congestion between Lake Shore Boulevard?

"A. I would say the congestion on the Freeway, from personal observation, as I say, the traffic backs up during the rush hours from Eddy Road and beyond Eddy Road during inclement weather and it backs up almost to East Boulevard. You can ge(t) at a certain speed up to that point. When you go there you crawl, so that the effectiveness of the Freeway—it loses its effectiveness after it proceeds to East Boulevard.

"Now, I am talking about merely the rush hour. During the other parts of the day, of course, there is no particular problem."

The testimony of the Chief of Police and the Mayor corroborates in every detail the fact that the only traffic congestion on the Freeway is as to eastbound traffic at the easterly end where the Freeway meets Lake Shore Boulevard in the village during the evening rush hours from about 4:30 or 5:00 o'clock P. M. until 6:00 or 6:15 P. M., and that there is no congestion of the westbound traffic lanes either there or at any other place or at any time. Just east of East 140th Street is a sign directing all through trucks going west to turn left (at East 140th Street). This direction sign, which is there without legislative authority, induces trucks to turn left across the eastbound lanes at all times including the hours when traffic congestion is experienced, adding to the confusion, although the route ahead, over the freeway, is not congested and would be available to truck traffic except for the restrictions of the Bratenahl

ordinance. It should be noted that in requiring westbound trucks to turn left and go over East 140th Street, probably to St. Clair Avenue, thence to East 72nd Street, which is the first place at which westbound trucks can re-enter Memorial Shoreway, that such route is entirely within the city of Cleveland. In making this detour, heavy city traffic is encountered on the streets through which such detouring traffic must pass, such streets running through residential, retail, commercial and industrial districts. The distance to be traveled is farther by several miles than would be the much shorter and safer route over Lakeland Freeway herein described as a non-access highway built for the purpose of relieving city streets of through traffic.

In addition to requiring westbound trucks to cut across the congested eastbound traffic lanes at East 140th Street throughout the day, including the rush hour period, thus delaying eastbound traffic, there is also a traffic light maintained by Bratenahl at the end of the Freeway, which, if not properly timed and limited, increases the delay through the intersection because of its close proximity to the necessary light at East 140th Street.

In considering the use of the detour caused by the village ordinance for trucks going east from East 72nd Street to East 140th Street and Lake Shore Boulevard over East 72nd Street, St. Clair Avenue and East 140th Street, and the same detour for like reasons for westbound trucks beginning at East 140th Street, the traffic engineer of the city of Cleveland said:

"A. St. Clair Avenue is an urban type street, which has, for a great portion of its length, heavy commercial strip development. It is very spotty with retail and semi-retail, commercial development. It is a street which acts somewhat as a distributor in north-south streets in that it, perhaps, has an unusual number of turning movements as against a street which carries more through traffic, and it has an unusual percentage of trucking against passenger vehicles as compared to other arteries similar, such as Detroit, Lorain, Carnegie.

"Q. Now, Mr. Kelly, based on your experience as an experienced traffic engineer, do you have an opinion as to which particular highway would be better suited for the people, commercial establishments of all the people of Northern Ohio as between the old—the Bratenahl Freeway and that part of St. Clair that runs parallel with it until it reaches 140th Street?

"* * *

"A. Yes, I have an opinion.

"A. Would you—

MR. WEGMAN: Objection.

"Q. Would you give your opinion?

"A. My opinion is that this is a quicker and safer route on the Freeway than over St. Clair as far as the driver or vehicle operator is concerned, and from the standpoint of residences, residential people in the neighborhood, it is less objectionable on the Freeway because there are no direct abutting property owners who object to any high

volume of any vehicles as well as commercial vehicles. It is my opinion this would be a preferred route because it is considerably quicker and safer."

The same witness, as a recognized and highly competent traffic engineer, in considering the reasonableness of the ordinance in question, testified as follows:

"Q. Would you have an opinion as to whether or not such a restriction would be reasonable?

"A. That question is so broad—I don't have an opinion. Reasonable covers a lot of ground.

"Q. In other words, you don't have an opinion on that matter, is that true?

"A. On whether the truck restriction on that section is reasonable?

"A. Yes.

"Well, as a traffic expert, in my own definition of reasonableness, I think it is unreasonable, but again I can't speak accurately because this is so broad. In my background of working in other cities, the word reasonable, I have to judge as against what council do, what people want in an area of democratic political environment, so from a purely traffic standpoint, traffic engineer, it would be unreasonable.

"Q. Do you take into consideration the fact that the Lakeland Freeway at the present time empties into—comes to an end at the easterly edge of the Village of Bratenahl and enters into a city street, have you taken that into consideration?

"A. Yes."

There is considerable evidence in the record concerning the fact that Cleveland requires westbound trucks to leave Memorial Shoreway at West 49th Street. This fact is presented in attempting to show that if it is reasonable for the City of Cleveland to eliminate trucks from the Shoreway west of West 49th Street, the same consideration must be given to the right of Bratenahl to restrict truck traffic from Lakeland Freeway running within its borders. The circumstances have no similarity whatsoever. The Shoreway west of West 49th Street goes through Edgewater Park which, in part, consists of extensive playgrounds and farther to the west, Clifton Boulevard, Lake Avenue and Edgewater Drive, which streets, with a few minor exceptions, serve exclusively a residential neighborhood continuing as such to their westerly termini in Lakewood. The Lakeland Freeway on the other hand, is a limited access highway which, to the common knowledge of all, was built to take care of all through traffic, thus promoting traffic safety, taking such traffic from ordinary streets in the city. A route manager of a baking company, having twenty-two retail bakery routes in northeast Cleveland and suburbs, testified as to the loss suffered by their route drivers because of the truck restrictions in Bratenahl. These route drivers could each save thirty six minutes a day by using the freeway (which is the shortest and safest route to their several destinations). They all would use the freeway at a time (going out in the morning

and returning in the afternoon or evening) when there is no congestion, such use being denied them only because of the truck restriction of the Bratenahl ordinance.

The Chief of Police expressed some concern as to the extent to which further congestion would limit the use of emergency vehicles in the Village. The freeway has been open for ten years. It is claimed that even without trucks, eastbound traffic backs up at the evening rush hour sometimes as far back as Eddy Road or East 105th Street and from the fact that the ordinance was passed when the freeway opened in 1948, congestion must have been experienced from the beginning of its use. Yet, in these ten years, the Chief of Police does not mention a single instance when an emergency vehicle was unable to meet an emergency call. The Village has no fire department so that Cleveland equipment is relied on. Since there is no congestion at any time as to westbound traffic coming into Bratenahl from the east on Lake Shore Boulevard, no possible congestion coming into Bratenahl from Gordon Park from the west and since no congestion has been suggested on the Eddy Road overpass, it is clear that fire equipment or any other emergency equipment coming into Bratenahl could not meet with anything more than normal traffic.

Memorial Shoreway and the Lakeland Freeway are a part of State Route No. 2. Its development and use as an important state route must, as far as possible, in the interests of safety, be free from unreasonable and unnecessary interference in expediting its use for all through traffic either intrastate or interstate. Such consideration for the public good is of primary importance. Therefore, the question here presented is whether or not the admitted congested conditions confined to eastbound traffic for not to exceed one and one-half hours at the evening rush hour period justifies closing a limited access highway to all truck traffic without exception at all times of the day and night. It should be noted, in considering this question, that the citizens of Bratenahl are not very much involved. It is the through traffic going beyond East 140th Street that is inconvenienced by the congested conditions of the freeway for about one hour and a half during the evening rush hour which is now to be only a temporary condition.

It is not to be denied that the right to use the streets for business purposes is a privilege which may be reasonably regulated and not a right which can be demanded in all events. In McQuillin on Municipal Corporations, 3rd Edition, Vol. 7, page 657, para. 24,618, it is said:

"The regulation of motor vehicles in their use of streets is an important function of modern municipal government, and is valid when it is reasonable, non discriminatory, and authorized by, and not in conflict with, State Law."

In the case of Froelich v. Cleveland, 99 Oh St 376, 124 N. E. 212, the Supreme Court had for consideration the question of the reasonableness of an ordinance of the City of Cleveland dealing with the limitation of the weight of motor vehicles below that provided by state law. In upholding the ordinance and setting forth the rules to be used in deter-

mining to what extent the police power may be used to impose limitations on the use of the public streets by motor vehicles, the court said:

"3. The state and municipalities may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community. But neither the state nor a municipality may make any regulations which are unreasonable. The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation."

This case was cited by the Supreme Court in holding that an ordinance of the City of Reading (Hamilton County) was unreasonable. In the case of **Richter Concrete Corp. v. Reading, 166 Oh St 279, 142 N. E. 2d 525,** it is said:

"Where an ordinance prohibits the operation of trucks over a certain weight on all the streets of a municipality, excepting the only state highway therein, and further excepting operations for loading or unloading at a residence, place of business or industry in the municipality or traveling to or from a residence, place of business or industry where such trucks are registered or hired, such ordinance is discriminatory against non-residents of such municipality, is an unreasonable classification, is violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and **Section 2, Article I. Ohio Constitution,** and is invalid."

(The Court of Appeals opinion, which was affirmed in the **Richter Concrete Corp.** Case, just cited, will be found in **103 Oh Ap 67, 136 N. ͫ 2d 422.)** See also **Teegarden v. Foley, 166 Oh St 449, 143 N. E. 2d 824.**

The rule as thus stated points the way to the conclusion to be reached from the undisputed facts in this case. The question is whether an ordinance barring all truck traffic of every character and description and at all times of the day and night from a state route limited access highway based on the ground that during an hour and one-half, or at the most, something short of two hours, eastbound traffic is subject to considerable congestion, is a reasonable exercise of legislative power, whether, in fact, such rule is an unreasonable interference with private rights beyond the necessities of the situations. The undisputed facts, coming for the most part from the defendants and their witness, point to but one answer and that is that the ordinance must fall as an unreasonable interference with constitutional rights in going far beyond the necessities of the situation.

To exclude all trucks (including station wagons with truck plates, when the use of the same vehicle with passenger plates, would not make its driver subject to arrest) from a limited access highway twenty-four hours a day, when the reason for their exclusion is congestion on the eastbound lanes in the late afternoon for a period of time not to exceed two hours, although westbound trucks would proceed on the freeway without contributing to the cause of the congestion, and to shift such truck traffic from such limited access highway onto busy city streets

outside the authority of the village council, creating added hazards for pedestrians and drivers of motor vehicles alike, is unreasonable and requires the conclusion that the prayer of the plaintiffs' petition should have been granted by the trial court.

Inasmuch as no question of fact requiring such conclusion is in dispute, the judgment of the trial court is reversed and the cause remanded to the trial court with directions to enter a decree for the plaintiffs as prayed for.

Exceptions noted.

HURD, PJ, KOVACHY, J, concur.